UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE BUENROSTRO VILLA,

             Plaintiff,

v.

NISSAN NORTH AMERICA, INC.,

             Defendant.

No. 2:25-cv-03128-DJC-CKD

ORDER

This is a lemon law case regarding an allegedly defective 2023 Nissan Rogue. Plaintiff Jose Buenrostro Villa moves to remand this action to the Sacramento County Superior Court after Defendant Nissan North America, Inc., removed the action to this Court on the basis of diversity jurisdiction. Because the Court finds that the amount in controversy exceeds the $75,000 jurisdictional threshold, the Motion to Remand is DENIED.

**BACKGROUND**

Plaintiff Jose Buenrostro Villa ("Plaintiff") purchased a 2023 Nissan Rogue ("Vehicle") on October 8, 2023. (Compl. (ECF No. 1-1) ¶ 9.) Plaintiff received express written warranties related to the Vehicle. (*Id.* ¶ 11.) The Vehicle subsequently developed electrical defects. (*Id.* ¶ 12.) After Defendant Nissan North America, Inc. ("Defendant") attempted and failed to repair the defects, Plaintiff revoked his

1

acceptance of the Vehicle. (*Id.* ¶ 23.) On November 22, 2024, Plaintiff filed this action in the Sacramento County Superior Court alleging violations of the Song-Beverly Consumer Warranty Act ("Song Beverly"). (*See generally* Compl.) Defendant removed the action to this Court on October 28, 2025. (Not. of Removal ("NOR") (ECF No. 1).) On November 26, 2025, Plaintiff filed a Motion to Remand, which is fully briefed. (*See* Mot. (ECF No. 7); Opp'n (ECF No. 9); Reply (ECF No. 10)[1].)

**LEGAL STANDARD**

Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal court if there exists original jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Courts strictly construe the removal statute against removal and federal jurisdiction must be rejected if there is any doubt as to the right of removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party removing a case to federal court "has the burden to prove, by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).

**DISCUSSION**

**I.   Timeliness of Removal**

The parties disagree as to whether Defendant timely removed the action to federal court. The Ninth Circuit has held that "untimely removal is a procedural defect and not jurisdictional." *Maniar v. F.D.I.C.*, 979 F.2d 782, 784 (9th Cir. 1992). Defendant contends that the federal removal statute's 30-day deadline to remove, as set out in 8 U.S.C. § 1446(b)(1), was not triggered because Plaintiff's Complaint was intentionally ambiguous about Plaintiff's citizenship and the amount in controversy. (*See* NOR.) Plaintiff asserts his Complaint was clear as to his citizenship and that Defendant has not carried their burden to establish the amount in controversy.

---

[1] The Court notes that the Reply was untimely filed more than a month after the original December 22, 2025 due date, which was ten days after Defendant filed their opposition. *See* Local Rule 230(d). Plaintiff's counsel is admonished for their failure to file a timely Reply. As Defendant had a full opportunity to file an Opposition to the Motion for Remand, there is little prejudice to Defendant.

Plaintiff further asserts that "Defendant's allegations concerning Subject Matter Jurisdiction have been rendered moot by the untimely filing of its Notice of Removal." (Theophil Decl. (ECF No. 7-1) ¶ 4.)

The Court agrees with Defendant that the Complaint is indeterminate regarding Plaintiff's citizenship and the amount in controversy such that the first 30-day deadline to remove under 28 U.S.C. § 1446(b)(1) was not triggered. That subsection provides, in part, that a notice of removal shall be filed within 30 days after defendant's receipt of a copy of the initial pleading setting forth the claim for relief. 28 U.S.C. § 1446(b)(1).

Here, the Complaint simply states that "Plaintiff is, and at all times relevant herein was, a resident of North Highlands, California." (Compl. ¶ 2.) Plaintiff cites no caselaw to support his argument that merely stating one's residence is sufficient to show domicile and, in any event, the Ninth Circuit has taken a contrary position. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695–96 (9th Cir. 2005) (concluding statements regarding past residency insufficient to establish citizenship) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (parties' actual citizenship, not residency, determines diversity)).

More significantly, the Complaint also fails to state any value for the amount in controversy. (*See generally* Compl.) Because Plaintiff's citizenship and the amount in controversy are indeterminate from the face of the Complaint, it was not apparent at the time the pleading was served that the case was removable under diversity jurisdiction. Instead, Defendant represents that it subsequently conducted its own investigation and determined that Plaintiff's California citizenship and the amount in controversy plausibly gave rise to federal subject matter jurisdiction. (NOR at 2.) Given that Defendant removed the action within one year of the filing of the Complaint, this is timely. *See Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1126 (9th Cir. 2013) ("It may be that in some diversity cases, defendants will be able to take advantage of the fact that neither the 'initial pleading' nor any later document

3

received from plaintiff triggers one of the two thirty-day periods.  In such cases, defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so.  In a non-CAFA diversity case, the advantage gained through such gamesmanship is limited by the fact that a notice of removal must be filed, in any event, within one year of the commencement of the action.  *See* 28 U.S.C. § 1446(c)(1).").

In summary, the Court concludes that Defendant did not have an obligation to remove the action within thirty days of receipt of the initial pleading under subsection (b)(1) and that the Notice of Removal is thus timely.[2]

## II.  Diversity Jurisdiction

The parties do not dispute that there is complete diversity of citizenship between them, thus, the remaining issue before the Court is whether the amount in controversy is met.[3]

### A.  Burden of Proof

The parties contest the nature of Defendant's burden of proof on removal. Defendant asserts that it need only plead a plausible basis for subject matter jurisdiction.  (NOR at 2; Opp'n at 17.)  Plaintiff disagrees, objecting that Defendant's calculation of the amount in controversy is "speculative" and lacks specific evidence. (Mot. at 9; Reply 2.)  Both sides are partially correct.  If, as here, the Complaint does not allege that the amount in controversy has been met, the removing Defendant need only plausibly allege in its notice of removal that the amount in controversy exceeds the jurisdictional threshold.  *Dart Cherokee Basin Operating Co., LLC v.*

---

[2]  The parties do not dispute that the second 30-day trigger under § 1446(b)(3) or the one-year trigger under § 1446(c) are not at issue.

[3]  The Court previously ordered Plaintiff to file a disclosure statement pursuant to Fed. R. Civ. P. 7.1(a)(2) within seven (7) days.  (ECF No. 6.)  Plaintiff has not yet done so.  In addition, Defendant's disclosure statement (ECF No. 1-4) does not meet the requirement of 7.1(a)(2): "The statement must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party . . . when the action is filed in or removed to federal court."  Fed. R. Civ. P. 7.1(a)(2).  The parties shall file these disclosures promptly.

*Owens*, 135 S. Ct. 547, 553-54 (2014); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).  Defendant has made plausible allegations in its Notice of Removal.  But when, as here, the Plaintiff contests, or the Court questions, the Defendant's allegations, the Defendant must then establish that the jurisdictional requirement has been met by a preponderance of the evidence.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).  At this point, the parties may submit evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015); *see also Dart*, 574 U.S. at 88 ("[W]hen a defendant's assertion of the amount in controversy is challenged[,] . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."). "[W]hen given the opportunity to present evidence, following [Plaintiff's] motion to remand, [Defendant has] the burden of supporting its jurisdictional allegations with competent proof." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020)

Plaintiff has clearly mounted a factual attack against Defendant's Notice of Removal by challenging the reasonableness of Defendant's assumptions. (*See* Mot. at 9–11.)  Therefore, the burden to establish jurisdiction by a preponderance of the evidence shifts to Defendant.  *Harris*, 980 F.3d at 699.

### B.  Relief Requested

In the Prayer for Relief, Plaintiff requests the following relief:

   a. For Plaintiff's actual damages in an amount according to proof;

   b. For restitution;

   c. For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c);

   d. For any consequential and incidental damages in an amount according to proof;

   e. For remedies authorized by Commercial Code sections 2711, 2712, and/or 2713;

5

    f.  For costs and expenses of suit, and for Plaintiff's reasonable attorneys' fees, pursuant to Civil Code section 1794(d);

    g.  For prejudgment interest at the legal rate; and

    h.  For such other equitable or legal relief as the Court may deem proper.

(*See* Compl.)  As to the requested damages, Plaintiff does not state a specific amount in his Complaint, but he did check the box on the civil cover sheet that the amount demanded exceeded $35,000.  (*See* ECF No. 1-1 at 4.)  A notation on a civil cover sheet, however, is insufficient to invoke the Court's diversity jurisdiction regarding the amount in controversy.  *See Balaoing v. Nissan N.A., Inc.*, No. 1:23-cv-00575-ADA-SAB, 2023 WL 4234664, at *5 (E.D. Cal. Jun. 28, 2023) (reviewing cases and determining that civil cover sheet not facially part of the complaint).  Therefore, Defendant must establish that it is more likely than not that the total amount in controversy exceeds $75,000.

### C. Actual Damages

Under the Song-Beverly Act, a plaintiff may recover "an amount equal to the actual price paid or payable by the buyer," reduced by "that amount directly attributable to use by the buyer."  Cal. Civ. Code § 1793.2(d)(2)(B)–(C).  While Defendant does not provide summary-judgment type evidence to support its proposed actual damages calculation, mindful that "both sides [may] submit proof," the Court will review all the evidence in the record.  *Dart*, 574 U.S. at 88.

In the Notice of Removal, Defendant asserts that it conducted a preliminary investigation and determined an actual damages value of $42,563.50, which is allegedly the purchase price of the Vehicle minus certain deductions.  (NOR at 4.)  Defendant then included purported estimates of mileage offset, manufacturer rebates, and negative equity for a total deduction of $2,252.50.  (*Id.*)  Defendant also avers that it investigated the Vehicle's repair history.  (*Id.*)  While Defendant did not

6

have to provide any supporting evidence or declarations in the Notice of Removal, once Plaintiff challenged Defendant's assumptions, Defendant missed a critical opportunity to provide such evidence in its Opposition.  Instead, Defendant limits its Opposition analysis to the procedural defect discussion.  (*See* Opp'n at 17 ("Nissan has satisfied its burden to plead that the amount-in-controversy exceeds $75,000, sufficient to establish a plausible basis for diversity jurisdiction.")).

Plaintiff, on the other hand, does provide summary-judgment type evidence.  The retail installment sale contract ("RISC") attached to Plaintiff's Motion reflects that Plaintiff agreed to pay $50,408 for the Vehicle which included a $500 manufacturer rebate toward the down payment, a $5,752.19 finance charge, and $44,155.81 financed.  (Installment Contract (ECF No. 7-1) at Ex. 2.)[4]  There was 52 miles on the odometer at the time of the Vehicle's purchase.  (*Id.*)  Monthly payments were to begin 12/12/2023 at $665.44 per month.  Plaintiff also asserts that 23 monthly payments (out of 74) have been paid.  (Mot. at 10.)  In the declaration, Plaintiff's counsel additionally asserts the mileage offset is $1,950.62 with the first warrantable repair request occurring at 6,540 miles.  (Theophil Decl. (ECF No. 7-1) ¶ 11.)  Defendant does not dispute Plaintiff's representations.

Beginning with the purchase price, the "'purchase price paid' is not limited to the amounts paid under a financing agreement but rather includes the entire sale price."  *Canesco v. Ford Motor Company*, 570 F. Supp. 3d 872, 892 (S.D. Cal. 2021) (citation omitted).[5]  That is, the purchase price includes not just the "cash price" but

---

[4]  The Court takes judicial notice of the RISC.  Fed. R. Evid. 201(b)(2).  "Courts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages."  *Luna v. FCA US LLC*, No. 4:21-cv-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021).

[5]  Plaintiff implies in his Motion that only the $500 down payment and the 23 monthly payments made toward the loan, rather than the entire loan amount, should be used to calculate the actual damages for the vehicle (Mot. at 10), but the authority he provides is distinguishable.  In *Chajon v. Ford Motor Company*, unlike here, the manufacturer relied on the Manufacturer's Suggested Retail Price of the vehicle for its actual damages calculation because the parties could not locate the sales contract.  2:18-cv-10533-RGK-RAOx, 2019 WL 994019, at *1 (C.D. Cal. Jan. 8, 2019).  Here, Plaintiff has himself provided the sales contract.  Additionally, the court in *Chajon* relied on *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002), in finding that "a plaintiff's recovery is limited to the actual payment amount to the seller."  *Id.*  But *Brady* involved a lease, whereas here Plaintiff has signed

7

also includes any charges for sales or use tax, license fees, registration fees, and other incidental fees, but excludes nonmanufacturer items installed by a dealer or the buyer. *Id.* at 892 (surveying cases); *see also* Cal. Civ. Code § 1793.2(d)(2)(B).  Accordingly, the following chart reflects the adjusted purchase price using the values shown on the retail installment sales contract:

| | |
|---|---|
| Cash Price | $36,078 |
| Document Processing Charge | $85 |
| Sales Tax: | $2,818.06 |
| EV Registration Charge | $33 |
| Registration Fees | $549.75 |
| Down Payment (Manufacturer's Rebate) | $500 |
| Finance Charge | $5,752.19 |
| **Adjusted Purchase Price** | $45,816 |

(*See generally* RISC.)  The sales contract also shows the following amounts: $199 for a "J.B. Express System Inc." theft deterrent device; $3,631 for a Western General service contract; $257 for a Nesna Maintenance service contract; and $995 for a debt cancellation agreement.  The Court declines to include these items in the adjusted purchase price calculation because they are not proper items of damages.  *See Canesco*, 570 F. Supp. 3d at 893 nn.10–11 (excluding debt cancellation agreement and optional service contracts from the purchase price calculation); *see also* Cal. Civ. Code § 1793.2(d)(2)(B) (excluding nonmanufacturer items installed by a dealer).

---

a contract to purchase the Vehicle.  Thus, *Chajon* is inapplicable.  In any event, assuming Plaintiff is successful on his Song-Beverly claim, "return to status quo must include paying off the loan balance.  If it did not, the consumer would have his or her down payment and monthly payments returned but left with a loan that still needed to be repaid and no funds to repay it, which would not put the consumer in the position he or she was in before buying the vehicle." *Canesco*, 570 F. Supp. 3d at 896; *see also Brancati v. Ford Motor Co.*, No. 5:25-cv-00070-JGB-DTB, 2025 WL 1192677, at *3 (C.D. Cal. Apr. 24, 2025) (following "other district courts in concluding that it is more appropriate to use the total cash price listed in the [RISC]" as the initial amount for calculating actual damages) (citation omitted).

In accounting for the mileage/use offsets, the Court uses the following formula:

$$\frac{\text{\# of Miles Drive Between Purchase \& First Repair Attempt}}{120{,}000 \text{ Miles}} = \text{Use Offset Multiplier}$$

$$\begin{array}{l} \text{Purchase Price} \\ \text{x } \underline{\text{Use Offset Multiplier}} = \\ \text{Use Offset Deduction} \end{array} \quad \rightarrow \quad \begin{array}{l} \text{Purchase Price} \\ \text{- } \underline{\text{Use Offset Deduction}} = \\ \text{Restitution} \end{array}$$

*Canesco*, 570 F. Supp. 3d at 898 (citation omitted).  Applying the calculation, the use offset multiplier is .054, which is 6488 miles divided by 120,000 miles.[6]  Multiplying the adjusted purchase price, calculated above, with the use offset multiplier, the use offset deduction is $2,474.06.  Finally, the restitution amount is the adjusted purchase price minus the use offset deduction, which comes to $43,341.94.

In summary, based on the undisputed evidence before the Court, the actual damages are $43,341.94.

### D.  Civil Penalties

The Song-Beverly Act provides that a buyer may recover "a civil penalty of up to two times the amount of damages" if the manufacturer or seller "willfully" violated a warranty or provision of the Act.  Cal. Civ. Code § 1794(c).  Plaintiff alleges Defendant acted willfully throughout the Complaint and expressly requests "a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c)" in the Prayer for Relief.  (*See generally* Compl.)  On these facts, some courts have found inclusion of the civil penalties to be appropriate.  *See Hernandez v. FCA US LLC*, No. 1:21-cv-0745-JLT-HBK, 2022 WL 819857, at *4 (E.D. Cal. Mar. 18, 2022) (surveying similar cases and applying prayed-for Song Beverly civil penalty).

Other district courts have found that civil penalties should not be included unless the removing defendant makes some showing regarding the possibility of civil damages.  *See Savall v. FCA US, LLC*, No. 3:21-cv-195-JM-KSC, 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (comparing and contrasting cases).  Plaintiff contends that

---

[6]  6488 miles is the balance of 6540 miles driven before the first repair minus the 52 miles on the odometer at the time of the Vehicle's purchase.

Defendant must carry its evidentiary burden and establish that it acted willfully to justify such an award.  (*See* Reply at 6.)  The Court disagrees.  Defendant need not prove that it willfully violated the Song-Beverly Act for civil penalties to be included in the damages calculation.  *See, e.g.*, *Brooks v. Ford Motor Co.*, No. 5:20-cv-302-DSF-KK, 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will deny that [they] willfully failed to comply with the Song-Beverly Act."); *Watson v. BMW of N.A., LLC*, No. 2:22-cv-01514-DAD-JDP, 2022 12442891, at *4 (E.D. Cal. Oct. 21, 2022) (collecting cases); *Canesco*, 570 F. Supp. 3d at 902 (siding with "majority of courts and more recent cases" in including civil penalties in amount in controversy); *Allen v. Mercedes-Benz USA, LLC*, No. 2:25-cv-01222-DJC-JDP, 2025 WL 1743919, at *4 (E.D. Cal. Jun. 24, 2025) (same).

Accordingly, the civil penalties are twice the amount of actual damages, which adds another $86,683.88 to the amount in controversy.  Thus, the Court concludes that the total amount in controversy is at least $130,000.  This comfortably exceeds the $75,000 jurisdictional threshold and the Court need not consider the parties' remaining arguments as to attorneys' fees.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (ECF No. 7) is DENIED.

IT IS SO ORDERED.

Dated:   **February 9, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

10